10 So.2d 601

STATE v. RIDER.

Ex parte RIDER.

No. 36822.

Nov. 4, 1942.

George L. Fontenot, of Ville Platte, for relator.

E. H. Guillory, Dist. Atty., of Ville Platte, for respondents.

ODOM, Justice.

On July 24, 1942, relator, Felton [Leston] Rider, filed in this court an application for a writ of habeas corpus, alleging that he was then incarcerated in the parish prison of Evangeline Parish and was being illegally detained therein under an illegal order of the judge of the Thirteenth Judicial District Court. He prayed that a writ of habeas corpus issue, directed to the Honorable J. Cleveland Fruge, judge of the Thirteenth Judicial District Court, and Parker Fuselier, sheriff of Evangeline Parish, commanding them to produce the body of relator in this court, and that after hearing relator be at once released and restored to his liberty.

On July 27 we granted a writ of certiorari, directing the judge of the Thirteenth Judicial District Court to transmit to the Supreme Court, on or before October 16, the record, or a certified copy thereof, of the proceedings complained of by relator, to the end that the validity of the sentences imposed might be ascertained. We further ordered that the judge and the sheriff show cause why the relief prayed for in the petition of relator should not be granted, and further ordered that, in the meantime and until further orders of this court, the rela-

tor be released, and that all proceedings against him in the district court be stayed and suspended.

The respondent judge and the district attorney accepted service, but neither has filed answer or return in this court. There are attached to, and made a part of, relator's application for the writ certified copies of three bills of information filed by the district attorney on August 9, 1940. In one of these it is charged that on the 2nd day of August, 1940, the defendant appeared as a witness in the case entitled State of Louisiana v. Hart Bondick, a case pending on the criminal docket of the Thirteenth Judicial District Court of the Parish of Evangeline, and did wilfully and feloniously commit the crime of perjury. This bill of information is numbered 2672.

One of the other two bills filed on the same day charges that the defendant, Leston Rider, on the 2nd day of August, 1940, "wilfully, unlawfully and feloniously did procure one, Walter Fontenot, to appear as a witness in the case entitled 'State of Louisiana vs. Hart Bondick, No. ——— criminal Docket, Parish of Evangeline, Louisiana', and did then and there procure said Walter Fontenot to commit perjury". This bill is numbered on the docket 2673.

The other bill, which is numbered 2674, was filed on the same date and charges that the defendant did wilfully, unlawfully, and feloniously procure one Lée Pershing Fontenot to appear as a witness in the same case and "did then and there procure said Lee Pershing Fontenot to commit perjury".

Certified copies of the minutes of the court, attached to and made a part of rela-

tor's application, show that on August 9, 1940, the date on which these bills were filed, the defendant, Leston Rider, was present in open court and was called up for arraignment and was arraigned on the Bill No. 2672, charging him with the crime of perjury, and that he entered a plea of guilty to said charge "and throws himself upon the mercy of the court". Thereupon, the defendant was sentenced to serve not less than six months and not more than 18 months in the parish jail, "His term of imprisonment to begin from the day of his incarceration therein".

The minutes show further that on the same day the defendant was arraigned on the other two charges, and that he entered a plea of guilty to each and "throws himself upon the Mercy of the Court." In each of these cases, the minutes show that sentence was "deferred".

These proceedings took place in open court on August 9, 1940.

A certified copy of the minutes of the court shows that on July 6, 1942, approximately two years later, the defendant, Leston Rider, was present in open court and at the bar, and "* * * is hereby recalled on the charge of perjury to which he pleaded guilty and [was] sentenced on August 9th, 1940. The sentence meted to said defendant, i. e., not less than six (6) months, and not more than eighteen (18) months in the parish jail is renewed this date, subject to a credit of ten (10) days previously served from August 9th, 1940 to August 19th, 1940."

The minutes show further that on the same day, July 6, 1942, the defendant was personally present in open court and at the bar, and presented himself before the court to be sentenced in the other two cases, Nos. 2673 and 2674, which, as we have stated, were charges that he had procured others to commit the crime of perjury. The minutes in each of these cases show that the defendant was sentenced on the charge of "perjury". The judge sentenced him in Case No. 2674 to serve a term of not less than six months nor more than two years in the parish jail, this sentence to run "consecutively with" the sentence renewed in Case No. 2672. And, in Case No. 2673, the defendant was sentenced to serve a term of not less than six months nor more than two years in the parish jail, "This sentence to run consecutively with the sentences given in Case No. 2672 and 2674 hereinabove".

It will be noted that, when the defendant appeared in open court and at the bar on July 6, 1942, and was ordered to serve the sentence of not less than six months and not more than 18 months in the parish jail, which sentence was imposed upon him originally on August 9, 1940, he was given credit for 10 days previously served, from August 9, 1940, to August 19, 1940.

It thus appears that, when the defendant was sentenced on the 9th day of August, 1940, he was immediately incarcerated and served 10 days of the sentence imposed for the crime of perjury, and that he was released.

Article 3 of relator's application to this court reads as follows:

"Your petitioner shows that ten days after his incarceration in the said parish jail of Evangeline he was liberated therefrom

and permitted to return to his home and family and nothing further was done in the matters against him until the 6th day of July 1942 when he was again taken into custody and the sentence of from six months to eighteen months in the parish prison, subject to a credit of ten days served, was renewed and again imposed upon him and the deferred sentences were then and at the same time renewed and your petitioner sentenced in both cases to not less than six months nor more than two years in the parish jail. Such sentences to run consecutively with that imposed in No. 2672."

We must accept the above as a true statement of the facts, because neither the judge, the district attorney, nor the sheriff made answer to the rule. Relator alleged that "all of the proceedings of July 6th, 1942 under and by virtue of which your petitioner is being held in the parish jail of Evangeline, were illegal, without legal warrant in the following, to-wit:

"1st. That since the maximum time for which your petitioner was sentenced in No. 2672 has elapsed and petitioner served part of the time imposed therein, it not being shown that he thereafter became a fugitive from justice, the Court was without authority in law to renew said sentence.

"2nd. That the sentences in Nos. 2673 and 2674, are and were illegal for the same reason and for the additional reason that deferment of sentence for a period beyond the maximum permitted by law, releases the accused party from further responsibility.

"3rd. Under Nos. 2673 and 2674, the accused, as shown by the bill of information was accused of procuring another to commit perjury, while the sentence imposed upon him was for perjury in each instance."

There is no merit in relator's contention that, since the maximum time for which he was sentenced for the crime of perjury in Case No. 2672 had elapsed before the sentence was renewed or recalled, the court was without authority in law to compel him to serve the remainder of the sentence. And there is no merit in relator's second contention that, as to Cases No. 2673 and 2674, in which sentences were deferred, the court was without power and authority to impose sentence after the lapse of approximately two years from the date on which defendant entered his plea of guilty.

Counsel for relator has not filed a brief, nor did he argue the points raised, or cite any authorities in support thereof in his application for the writ. In his application he merely submitted the points raised, to the end that the court "may determine whether or not he [the defendant] is entitled to his liberty".

Counsel for relator does not inform us, and there is nothing in the record to show, why relator was released from custody 10 days after he was incarcerated in the parish prison. We are informed, however, that he was not a fugitive from justice. It is alleged that he was liberated from the parish prison and "permitted to return to his home and family". For all we know, relator may have been "liberated" from prison and "permitted to return to his home and family" because of some physical infirmity or affliction of his own or a distressed condition of his family. In either of such events, his liberation from prison

may have been beneficial or advantageous to him or his family. In any event, he has no right to complain, because it is made certain that he has not paid the penalty inflicted upon him for his confessed transgression of the law. He confessed in open court that he was guilty of the heinous crime of perjury. The rule applicable to a case like this, which rule is based upon the settled jurisprudence of this country, is clearly and concisely stated in 8 R.C.L., Paragraph 267, page 259, as follows:

"Effect of Lapse of Time Without Serving Sentence.—The judgment is the penalty of the law, as declared by the court, while the direction with respect to the time of carrying it into effect is in the nature of an award of execution. Where the penalty is imprisonment, the sentence of the law is to be satisfied only by the actual suffering of the imprisonment imposed, unless remitted by death or some legal authority. Therefore the expiration of time without imprisonment is in no sense an execution of the sentence. Accordingly where the judgment and sentence is imprisonment for a certain term, and from any cause the time elapses without the imprisonment being endured, it will still be a valid, subsisting, unexecuted judgment. And where a convict is permitted to absent himself from prison the time when he is absent is no part of the sentence. And therefore where a convicted defendant is at liberty and has not served his sentence, if there is no statute to the contrary, he may be rearrested as for an escape, and ordered into custody on the unexecuted judgment, and the result is the same if he escapes to another jurisdiction and is brought back, though by illegal means."

Numerous authorities are cited in support of the above statement of the general rule. Similar statements are found in other works on criminal law and jurisprudence.

■ A reading of the cases where the point here involved was considered shows that the courts hold generally that the essential part of the sentence or judgment is not the time when it should be executed but the extent of the punishment fixed, and that the expiration of the time without imprisonment is in no sense an execution of the sentence. The sentence imposed upon relator in this case not having been executed, it was proper for the court, if it saw fit, to recall relator to the bar and order that the sentence imposed upon him be executed.

■■ As to the two cases against defendant in which sentence was deferred, counsel's complaint is that, after the lapse of two years, the court was without power and authority to impose sentence. As we have stated, counsel has cited no authority in support of his contention, and we find on investigation that the general rule is that under such circumstances a defendant may be recalled and sentenced at any subsequent term of the court. We quote the following from 15 Am.Jur., page 141, Paragraph 487:

"Imposition of Sentence at Subsequent Term.—In the absence of a statute to the contrary, sentence does not necessarily have to be imposed at the same term of court at which the verdict or plea of guilty was had, and courts of general jurisdiction, having stated terms for the trial of criminal ac-

tions, have the power to continue the case to a subsequent term for sentence."

We know of no statute in this state which requires a judge to pronounce sentence during the same term of court in which a defendant enters a plea of guilty or is convicted. Article 521 of the Code of Criminal Procedure prohibits the judge from passing sentence in less time than 24 hours after conviction, unless the accused waives the delay and asks for the imposition of sentence at once, and the same article goes on to provide that it shall be within the discretion of the trial court, and not subject to review, for the judge "to grant or to refuse to grant a longer delay than twenty-four hours between conviction and sentence."

██ In Bills No. 2673 and 2674, it was alleged that the defendant did "procure" other persons to commit perjury. The minutes show that, when he was arraigned on those charges, he entered a plea of guilty. The minutes further show that, when he was called up for sentence on July 6, 1942, he was sentenced for the crime of "perjury". This recital of the minutes may have been a clerical error made by the clerk of court. As stated in 24 C.J.S., Criminal Law, § 1579, page 97, "The judgment and sentence must be responsive to, and in accord with, the verdict of the jury, or the finding of the court, where the trial is by the court without a jury * * *. Thus, where the verdict finds accused guilty of one offense, the court cannot render judgment or pronounce sentence for another and different offense, even though it may be similar in character and the penalties are the same".

█ It has been held, however, that "The entire record may be looked to in ascertaining the offense for which the accused is sentenced, and an erroneous recital or statement of the offense by the court in pronouncing sentence, or of the clerk in recording in the minutes of the proceedings kept by him the judgment imposed, will not vitiate the judgment when the record fully discloses the offense for which the accused was indicted, tried, and convicted". Hambrick, plaintiff in error, v. State of Florida, 80 Fla. 672, 86 So. 623, 624, 14 A.L.R. 987; Pointer v. United States, 151 U.S. 396, 14 S. Ct. 410, 38 L.Ed. 208.

"An erroneous statement of the offense is not fatal, where it is corrected by the record itself which shows what the offense really is." 24 C.J.S., Criminal Law § 1601.

██ In the cases here involved, the record clearly shows what the offenses for which the defendant was sentenced really are. But the safe and better rule to follow is for the judge to pronounce sentence in exact accord with the verdict.

█ The minutes of the court, as recorded by the clerk, do not make it clear as to whether the judge intended that the sentences imposed in the latter cases were to run concurrently with that imposed in the perjury case or whether the sentences were to be served consecutively. The minutes in Case No. 2674 recite: "This sentence to run consecutively with the sentence renewed in Case No. 2672 above". And the minutes of Case No. 2673 recite: "This sentence to run consecutively with the sentences given in Case No. 2672 and 2674 hereinabove".

The word "consecutive", according to Webster's New International Dictionary, means "Following in a train; succeeding one another in a regular order, or with uninterrupted course or succession; having no interval or break".

If the minutes recited that the sentences were to be served "consecutively," the meaning would be clear—that is, that the second sentence should be served immediately following the expiration of the first and the third immediately following the expiration of the second. But, according to the minutes, the second sentence was to "run consecutively with" the first, and the third was to "run consecutively with" the other two. That could not be done.

It is likely, we think, that the judge ordered that the sentences be served "concurrently", and that the minute clerk misunderstood him and wrote the word "consecutively". The word "concurrent", according to Webster, when used as a law term, means "operating simultaneously; as, concurrent sentences."

The fact that the sentences imposed in Cases No. 2673 and 2674 are irregular and somewhat doubtful as to their meaning affords no reason for setting them aside. The trial court may at any time have the record amended so as to conform to the facts.

"It is well settled that the court has inherent power, during the term, * * * or at any time thereafter to amend its record as to all ministerial acts therein and to correct by amendment clerical errors or omissions in any and all of the papers constituting its record, so as to make the record conform to the truth and show what actually occurred. Thus, mere formal or clerical errors, omissions, or mistakes in the entries of the clerk in making up the record may be corrected by a nunc pro tunc order at a subsequent term. The making of such amendments to the record is within the discretion of the trial judge, subject to review only in case of an abuse of such discretion." 16 C.J., p. 1322, Criminal Law § 3114, 24 C.J.S., Criminal Law § 1604.

Since we hold that the judge was vested with authority to recall the defendant into court and order him to serve the remainder of the sentence imposed upon him in Case No. 2672, it follows that the writ of habeas corpus heretofore granted herein must be recalled.

For the reasons assigned, the writ of habeas corpus heretofore issued herein is recalled and set aside, and the ruling of the trial judge ordering the defendant, relator, to serve the sentence imposed upon him in Case No. 2672, less 10 days already served, is affirmed.

O'NIELL, C. J., dissents.

ROGERS, J., absent.