MARVIN, Judge.
In each of these cases, consolidated for the purposes of an appeal by the State, the State filed a rule against the respective defendant alleging him to be a habitual offender within the meaning of R.S. 32:1472 of the Motor Vehicle Habitual Offender Law. Attached to each petition is a certified copy of the record of the driving convictions of each defendant as required by Section 1473 of the law. It was also stipulated that in each case the defendant’s drivers license had been previously revoked or suspended under provisions of Title 32 other than the Habitual Offender Law.
In each case, with the exception of Number 12,655, where only a Motion to Dismiss in the nature of an exception of res judicata was filed, the defendants filed the exception of prematurity, the preemp-tory exception of no right or no cause of action, and the exception of res judicata. The trial court sustained the exceptions of res judicata and no right, no cause of action from which ruling the State appeals.
The defendants generally contended be-„ low and the lower court sustained exceptions in each case on the grounds that (1) the State’s petition did not allege or show the presence or intelligent waiver of counsel in the criminal convictions on which the State relies to invoke the Habitual Offender Law, and (2) that the defendants’ driving privileges had already been revoked in the prior criminal proceedings, thereby rendering an action under the Habitual Offender Law premature and as having the status of a thing adjudged since the Habitual Offender action is based on the same cause of action and the same demand between the same parties as in the prior criminal action against the defendant resulting in revocation or suspension of his driving privileges.
In State v. Love, 312 So.2d 675 (La.App.2d Cir.), rehearing denied June 3, 1975, application for writs denied, September 8, 1975, La., 317 So.2d 627, we held that the State in a civil proceeding authorized by the Motor Vehicle Habitual Offender Law, may have a person declared a habitual offender on the basis of prior un-counseled convictions, even though the declaration results in the loss of his driving privileges and possibly will lead to additional proceedings of a criminal nature resulting in imprisonment.
In Love, we said:
“Insofar as the instant civil suit is concerned we find the decisions of the United States Court of Appeal, Fourth Circuit, persuasive ... In our opinion, the constitutional safeguards . do not completely invalidate an uncounseled misdemeanor conviction. Only the loss of liberty or imprisonment resulting from the conviction is invalid; consequential civil disabilities are not . To extend Argersinger [Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530] to automobile driver license revocation proceedings would frustrate the legislatively determined state policy of removing habitually hazardous drivers from the highways. The constitutional foundations for Ar-gersinger, the protection of fair trial and due process, do not require this result.”
For the reasons expressed in Love, the exceptions of no cause or right of action are without merit and should have been overruled.
*647 The fact that the original suspension and the instant action seeking adjudication of each defendant as a habitual offender is based somewhat on the same offense, does not automatically preclude this action under the Habitual Offender Law. We are dealing with the Louisiana law of res judicata as found in Civil Code Article 2286, and any doubt in regard to its application must be resolved against the party seeking its application. Makar v. Ivy, 291 So.2d 861 (La.App. 3rd Cir., 1974).
“Res judicata applies only when the thing demanded is the same, the demand is founded on the same cause of action and the demand is between the same parties in the same capacities.” Barnett v. Develle, 289 So.2d 129, 141 (La., 1974).
In Love, we recognized that the legislatively determined policy was to remove habitually hazardous drivers from the highways of the state. Under the Habitual Offender Law, the defendant is prohibited from driving for a period of up. to five years and if he does violate the prohibition, the penalties therefor are enhanced and are much greater than the penalties merely for driving under revocation or without a license as provided in other sections of R.S. Title 32. See particularly Sections 1480, 1481. The thing demanded by the State of Louisiana is not the same and the demand is not founded on the same cause of action, although the demand could be broadly said to be between the same parties. It should be noted however, in the first instance, the suspension or revocation may be done by the Department of Public Safety extra-judicially, while in this instance the State as parens patriae is seeking a judicial determination that the defendant is a habitual offender which may expose him to enhanced penalties, in an effort to remove the habitual offender from the highways of the state. The exception of res judicata should not have been sustained.
The same reasoning may be applied to the exception of prematurity, on which there was no ruling below. Moreover, if the one year suspension under a D.W.I. or similar statute may be said to serve as a bar to a suspension of five years under the Habitual Offender Law until the one year suspension runs, the result could be a total suspension for six years if the state is required to wait until the one year suspension had run. We can reasonably conclude that none of these defendants seek this result.
The statute (Act 697 of 1972) is clear in its stated policy and further provides in Section Four thereof that it should not be construed to preclude the exercise of regulatory powers of any department of the State having authority to regulate licensing of persons to operate motor vehicles. We find that the statute is not ambiguous and that the Habitual Offender Law may be invoked notwithstanding that a defendant’s driving privileges may have been previously suspended under some other provision of the law.
NO. 12,655
STATE V. JERRY D. CAMP
MOTION TO DISMISS APPEAL
This case was filed some ten days before the other cases with which it was consolidated for the purposes of appeal. Judgment on the motion to dismiss in the Camp case was rendered September 6, 1974, and signed on September 10, 1974. In the remaining cases, the judgment was signed on February 13, 1975, after a hearing in these cases on November 19, 1974.
In Camp, the minutes of the lower court show the following:
“Sept. 10, 1974 Judgment showing the rule to show cause in this case dismissed at Plaintiff’s cost was this day read, signed and filed. (See decree) (Judge Fant)
“Dec. 4, 1974 The District Attorney gave oral notice of his intention to apply to the Second Circuit Court of Appeals *648 for writs. The Court allowed the District Attorney ten days in which to apply for writs. (Judge Fant)
“Dec. 20, 1974 The Court ordered the Minutes of December 4, 1974 be amended to read, ‘the District Attorney made an oral motion for an appeal to the Second Circuit Court of Appeals, said motion was granted by the Court’. (Judge Clark)
“Feb. 13, 1975 The defendant, not present, but represented by Alfred E. Soderman, Jr., attorney at law, Motion for Appeal and for Consolidation for Appeal was filed this day by the District Attorney. Order that an appeal be granted and that Cases No. 97,600, 97,682, 98,146, 98,148, 98,149, 98,150, ■98,151, 98,152, 98,153, 98,154, 98,160 and 98,422 be consolidated for appeal and that the return date for this appeal be fixed at April 2, 1975 was filed this day and signed by Judge William J. Fleni-ken. (Judge Alexander)”
Appeals from a judgment under the Habitual Offender Law are to be subject to the rules as appeals in civil actions. R. S. 32:1478.
Defendant’s Motion to Dismiss the appeal in this case is based on the contention that the delays for appealing did not extend to December 20, 1974, the date of the amendment of the December 4, 1974, minutes. The delays for appealing had not expired on December 4, 1974, and the amended minutes of that date do show that an appeal was sought by the State and was granted on that day by the lower Court. Article 2125, La.C.C.P. states that the return day of the appeal shall be fixed by the trial court at not more than 60 days from the date the appeal was granted. While this apparent oversight on the part of the trial court should not be lightly condoned, the duty of timely fixing the return date rests with the court and not the appellant and the failure of the court should not prejudice the appellant. See Hannagriff v. King, 11 La.App. 467, 123 So. 391, 1st Cir., 1929. Appellee’s Motion to Dismiss the appeal is denied.
In each of these consolidated cases, the ruling of the lower court sustaining exceptions, whether one or more, is reversed and each case is remanded for further proceedings consistent with the views expressed herein.
Before PRICE, HALL, MARVIN and SMITH, JJ.