CARAWAY, J.
|,Defendant waived both his right to counsel and his right to a trial by jury. After a bench trial, he was found guilty of second degree battery, a violation of La. R.S. 14:34.1. He was sentenced to five years in prison at hard labor without the benefit of probation, parole or suspension of sentence. Defendant now appeals, once again proceeding pro se. For the following reasons, we affirm his conviction, but amend his five-year sentence to delete the prohibition against probation or parole eligibility and affirm his sentence as amended.

Facts

On September 6, 2009, at approximately 5:30 in the afternoon, the Ouachita Parish Sheriffs Office received a call concerning a “disturbance in progress” occurring on Burton Drive in Monroe. Corporal Jack Kottenbrook immediately responded to the dispatch. When he arrived at the scene, he observed defendant, Gene Autry Hill (“Hill”), in the middle of the street, standing above and forcefully hitting his former girlfriend, Rita Thomas (“Thomas”). As soon as Hill saw the sheriffs car approach, he ran from the scene and into his house, located on Burton. Corporal Kottenbrook waited for backup before pursuing the defendant, who eventually came out of the house on his own volition. Hill was handcuffed and placed into the back of the patrol car. Corporal Kottenbrook then checked on Thomas and took photographs of her injuries. An ambulance was called to take her to the hospital for medical assistance.
*804 [2By bill of information, filed October 2, 2009, Hill was charged with second degree battery under La. R.S. 14:34.x.[1] He was appointed counsel, but requested that he be able to represent himself. Hill was questioned by the trial court as to his competency to proceed pro se and warned against the dangers of self-representation. Hill was ultimately granted the right to waive counsel, but the trial court insisted on the appointment of a standby attorney.
The case was called for trial on March 29, 2010. However, the victim was unable to be located and absent from the courtroom.[2] Because the defendant insisted that he be able to face his accuser, the trial was continued until March 31, 2010. Hill offered information concerning the victim’s whereabouts and was given permission to contact her by telephone in order to secure her presence at trial.[3] At this juncture, Hill additionally waived his right to a trial by jury.
After successfully securing Thomas’s presence, trial was commenced on March 31, 2010. Both Thomas and Corporal Kot-tenbrook testified. Thomas’s testimony revealed that on September 6, 2009, the defendant held her in his home against her will for the entire day, where he hit her on the head with a shoe and on her knee with a baseball bat. She was able to escape from the residence; however, the defendant chased her, grabbed her by the neck and dragged her to the middle of the street where he proceeded |8to kick and stomp on her. She stated that she lost consciousness for a brief period of time. Photographs of Thomas’s injuries were submitted into evidence. The defendant testified in his own defense, denying the allegations against him. He admitted, however, that he attempted to get Thomas to come back into his house and that he placed his hand over hér mouth to prevent her from yelling, “call the police.” He acknowledged that Thomas was resisting his efforts. He defended his actions by asserting that his wallet was missing and that he believed Thomas had stolen it.
After the presentation of all evidence, both the state and the defendant gave closing arguments. The trial court then recited the applicable law and took the matter under advisement. After a brief recess, the court found the defendant guilty as charged. Hill subsequently filed a motion for new trial and a motion for post-verdict judgment of acquittal, both of which were denied. On June 30, 2010, the defendant was sentenced to five years in prison at hard labor to be served without benefit of probation, parole or suspension of sentence.
Hill filed a notice of appeal. The trial court once again explained the importance of counsel and that he was entitled to have the Louisiana Appellate Project represent him on appeal. Defendant insisted he continue pro se. Hill filed a litany of motions and writs relevant to this appeal, including various requests to supplement the appellate record.[4]
Defendant appeals his conviction, assigning five different pro se errors.
14 Discussion
I.
In his first assignment of error, Hill claims that the trial court erred in denying *805 his motion for a new trial. He argues that his conviction was based on the perjured testimony of Corporal Kottenbrook.
La.C.Cr.P. art. 851 provides:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
The trial court is vested with almost unlimited discretion to grant or deny a motion for new trial to serve the ends of justice, and its decision should not be interfered with unless there has been a palpable abuse of that discretion. State v. Guillory, 10-1231 (La.10/8/10), 45 So.3d 612.
|sThe only possible ground on which the defendant could seek a new trial would be under La.C.Cr.P. art. 851(5), which allows the trial court to grant a new trial in the interest of justice. Defendant complains that there is a discrepancy between the affidavit of probable cause to arrest without a warrant and the testimony of Corporal Kottenbrook. He argues that the affidavit lacks the officer’s testimony that he actually observed the defendant hitting the victim.
Under La.C.Cr.P. art. 230.2, a law enforcement officer effecting the arrest of a person without a warrant shall promptly complete an affidavit of probable cause supporting the arrest of the person. The purpose of such an affidavit is to allow for a subsequent judicial determination of probable cause. U.S. Const. amend. IV; La.C.Cr.P. art. 230.2; State v. Wallace, 09-1621 (La.11/6/09), 25 So.3d 720. The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. Probable cause, as the very name implies, deals with probabilities. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); State v. Rodrigue, 437 So.2d 830 (La.1983). Based on these legal precepts, the arresting officer’s obligation to disclose information is broader at trial than it is in establishing probable cause. Thus, the fact that at trial Corporal Kottenbrook revealed a more complete | ^recitation of the events that took place is not indicative of an intent to provide false information; rather, it *806 is consistent with his heightened burden of proving defendant’s guilt.
We nevertheless find that the trier-of-fact could determine that the affidavit of probable cause is entirely reconcilable with the officer’s testimony. The affidavit of probable cause in question provides in part:
A witness stated that the arr. released the viet. when I Dy Kottenbrook arrived on scene. When Dy. got out of patrol veh. several people pointed out the arr. Dy commanded the arr. to stop and the arr. then ran into his residence followed byDy.
Corporal Kottenbrook testified that when he arrived to the scene, he “observed a black male standing above a black female in the middle of the street.” “He was standing above her. He was hitting her.” Although this specific observation by the officer was not contained in the affidavit of probable cause, Corporal Kottenbrook consistently testified that this is what he witnessed on the date in question.
Because the defendant has failed to provide proof that Corporal Kottenbrook in any way perjured his testimony, this assignment of error lacks merit.
II.
Hill next argues that the record has been intentionally augmented and falsified to strengthen the state’s case.[5] Specifically, he claims that the court 17reporter added words to Thomas’s testimony during the proceeding held on March 31, 2010. He specifically points to a portion of the transcript that reads:
He grabbed me by the neck and dragged me down the hill of a walkway. It was hill like over a carport. He dragged me down there by my neck. He drug me until he got me out in the middle of the street and then he started kicking and stomping me.
Hill asserts that the victim only spoke the first sentence and that everything which followed was added by the court reporter.
In reaching the merits of the defendant’s claim, we find that there is absolutely no evidence to support the defendant’s assertions. The court reporters signed all transcripts, attesting to their accuracy. See State v. Holmes, 99-0898 (La.App. 4th Cir. 11/8/00), 791 So.2d 669, writs denied, 01-2194 (La.6/7/02), 817 So.2d 1142 and 01-2205 (La.6/7/02), 817 So.2d 1143. Furthermore, the accuracy of the record is substantiated by defendant’s own subsequent cross examination of Corporal Kot-tenbrook:
Q: ... The victim testified that she was kicked all in the side, stomped and all that. But you have no pictures of her being injured in the side or nothing like that. Why you didn’t get none of those?
A: The side of—
Q: Of the victim being stomped and kicked on the ground by the defendant.
*807 A: I took all the photographs that I deemed necessary to take
⅜ * * * * #
Q: The victim said she strangled by the defendant to the point where she lost consciousness.
IsA: Yes, Sir.
Hill’s questioning therefore is consistent with the victim’s testimony that he now disputes as being added by the court reporter. This assignment is without merit.
III.
Hill asserts that he was “coaxed” into becoming an “agent for the state” when he provided information concerning the whereabouts of the victim, who was allegedly homeless at the time of trial. Defendant provided the state with phone numbers where Thomas could be reached and contacted her relatives requesting her presence at trial. He alleges that these actions violated his right against self-incrimination, and as a result he was forced to take the stand to controvert the accusations lodged against him. Although he admits that he desired to face his accuser, he claims he objected to a continuance of trial.
Upon request by the defendant, this court ordered the supplementation to the appellate record of the March 29, 2010 transcript. This transcript wholly negates Hill’s contention that he was forced to provide information concerning the victim’s whereabouts. To the contrary, the state was ready to proceed to trial without calling Thomas as a witness. It was only at the insistence of the defendant that the trial court made an effort to have the victim present in court:
State: I would be making the same argument that people making in jury trials for murders. There’s no victim, but I can still prove my case without that.
Court: All right. The state believes they could prove the case without her. You’ve got to decide, sir, if she doesn’t lflsurface, which she very well may not, do you want to still go forward, or would you rather have more time to try to locate this lady. If you do want more time to try to locate her, I will be willing to give you the time. * * * Would you rather go forward without her or would you rather have her here? That’s the question.
Hill: I’d rather have her here * * * I mean, I have a right to face my accuser.
A later letter written by Hill and filed into the record on June 30, 2010, evidences his reasoning for desiring the victim’s presence at trial:
I even help the state locate the victim to be at trial knowing that once she told what really happen the day were arrested I would have been out of jail, but she gave false testimony.
Apparently Hill had false hopes that the victim would change her story and come to aid in his defense.
Critically, the record reveals that it was Hill who volunteered information pertaining to Thomas’s location. Without any solicitation on the part of the state, Hill asked the trial court, “could I sit down with [the assistant district attorney] and give him information where he can get in touch with her?” The Fifth Amendment protects only against compelled self-incrimination. U.S. Const. amend. V; State v. Charles, 09-0433 (La.9/4/09), 16 So.3d 1166. Because the defendant voluntarily provided the allegedly incriminating evidence, we cannot say that his fifth amendment rights were in any way violated.
*808 In contradiction, Hill also opposed the trial court’s motion for continuance because he wanted the case to move forward. However, under the provisions of La.C.Cr.P. art. 712, a continuance may be granted in any case if there is good ground therefor. The grant or denial of a motion for |incontinuance is within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a showing of abuse and specific prejudice. State v. Morris, 43,522 (La.App.2d Cir.9/17/08), 996 So.2d 306. The decision whether to grant or deny a motion to continue depends on the circumstances of each particular case. State v. Commodore, 00-0076 (La.App. 4th Cir.11/21/00), 774 So.2d 318.
Under the circumstances of this case, we find that the trial court did not abuse its discretion in granting a continuance of two days to allow a reasonable time to locate the victim and secure her presence in the courtroom. Although the defendant opposed the continuance based on concerns over expediting the trial, he remained unwavering in his demand to face his accuser. The trial court weighed the concern for proceeding to trial with Hill’s right to confront the witness and ordered a short two-day continuance. This was within the trial court’s discretion. Accordingly, this assignment lacks merit.
IV.
Hill next complains that the prosecutor threatened to file a habitual offender bill against him if he continued to file pleadings and continued to lodge allegations of perjury against Corporal Kotten-brook. Additionally, he claims that the threat prevented a witness from testifying on his behalf during his sentencing hearing. Defendant’s sentencing was originally docketed for June 1, 2010. However, the minutes reflect that the hearing was reset for June 17, 2010. The matter was apparently delayed in order to accommodate a witness, Glenda Hill, who was expected to testify on the |n defendant’s behalf. Nevertheless, on June 17, 2010, the witness was not present in the courtroom for sentencing. Hill argues that the reason for her absence was attributable to her fear that if she testified, the state would file a habitual offender bill. However, during the June 17 hearing the court asked Hill what the witness would say had she been present. He responded, “Well, I can’t say.”
We find nothing in the record to support the defendant’s allegations. No evidence exists establishing that the witness was not present for sentencing as a result of her fear that the state would file a multiple offender bill. Moreover, defendant has been permitted to file a sizable number of pleadings in both the trial court and in this court. The prosecutor has not filed a habitual offender bill in retaliation for any of defendant’s actions. He has further denied that it was ever his intention to file a habitual offender bill against the defendant, although we note that it was well within his right to do so. Under La.C.Cr.P. art. 61, “the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.” Further, the district attorney has great discretionary power to file a habitual offender bill under La. R.S. 15:529.1(D), just as he has the initial power to prosecute “whom, when, and how” he chooses. State v. Brisco, 04-3039 (La.7/6/06), 933 So.2d 754, citing State v. Dorthey, 623 So.2d 1276 (La.1993).
These claims by the defendant regarding his sentencing and the prosecution’s conduct have no merit.
*809 _bV-
In his final pro se assignment of error, Hill claims that the trial court abused its discretion when it did “not let standby counsel assist [him] to show that the officer had [given] false testimony.” On February 9, 2010, the trial court conducted a hearing concerning the defendant’s motion to waive his right to counsel. The transcript of the hearing reveals that the trial judge repeatedly warned the defendant of the perils of self-representation and the benefits of having a seasoned attorney to represent him. The court explained the possible penalty if the defendant were found guilty of the charge against him and further explained the possible penalty if the defendant were multi-billed as a habitual offender. After Hill insisted on self-representation, the trial judge questioned him about his age, education level, mental condition and past experience in representing himself. The trial judge subsequently concluded that Hill knowingly and intelligently waived his right to counsel. Defendant’s previously appointed attorney, Elizabeth Brown, was discharged from her responsibilities; however, the court appointed her as “standby counsel.” The court explained to the defendant what was meant by the term “standby counsel”:
Standby counsel is not somebody that can say Mr. Hill, you need to do this or Mr. Hill, you should have done that, or Mr. Hill, I would suggest that these are your options, this is what you should do. What standby counsel does, and Ms. Brown could tell you because she just served in this role, is she will answer any questions you have. If you say, Ms. Brown, what does voir dire mean, she can explain that to you. Ms. Brown, how do I admit this evidence, she can explain what the process is, but she’s not going to tell you what you should or should not do because she’s not your attorney. She’s only an attorney who’s here in the event that you need to ask her a question.
_Jj2After the defendant received this explanation, he asked the court if Ms. Brown had to serve as standby counsel. The court affirmed that she would act as standby counsel, but assured the defendant that she would not advocate for him and that her function would be restricted to answering his questions.
Although he was reluctant to accept even the assistance of standby counsel, defendant now complains that he was denied her aid in attempting to prove that Corporal Kottenbrook testified falsely. A review of the record indicates that after the state completed its direct examination of Corporal Kottenbrook, the trial judge stated:
All right. Mr. Hill, what we’re going to do is in a moment we’re going to take another recess to give you an opportunity to think about whatever the questions you might have for this witness, also to consult with Ms. Brown if you need to. I do want to let you know, too, she had approached on the record to ask for what’s called a sidebar. I just want to let the record be clear. The question from Ms. Brown, is, you’ve asked her [to] give you specific direction about how to ask some certain questions of this witness. And I’ll tell you what I told her, which is that, you know, you are your own attorney and you’re the one who needs to develop your strategy and whatever questions you might have. But if she can answer your questions, then she’s asked to do so. Again, she is not prepared to defend you because she’s not your attorney. She is your legal resource and she’ll give you the best advice she can based on what she’s heard here in the courtroom in terms of whatever direction or angle you want to *810 take. But realize she has not, you know, spent the time to prepare for this witness and prepare what you should or shouldn’t ask.
The trial judge then called a recess so that the defendant could ask Ms. Brown questions and prepare for the questioning of the witness. At the conclusion of the recess, Brown stated for the record, “I was just going to say that we did speak, and I think I answered anything he asked me concerning that.”
114Both the Louisiana and United States Constitutions guarantee a criminal defendant’s right to the assistance of counsel. Nevertheless, a defendant may elect to represent himself if the choice is “knowingly and intelligently made” and the assertion of the right is “clear and unequivocal.” U.S. Const. amend. VI; La. Const, art. I, § 13; Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Brown, 03-0897 (La.4/12/05), 907 So.2d 1. In McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the United States Supreme Court confirmed the right of a criminal defendant to represent him or herself pro se while allowing the trial court to appoint standby counsel “to explain and enforce basic rules of courtroom protocol.”
A criminal defendant does not have the right to act both as “represented and representative” due to the potential for disruption of the trial process. State v. Brown, supra. “Hybrid” representation does allow a defendant the right to defend himself as co-counsel while standby counsel explains and enforces the basic courtroom rules, as long as standby counsel’s participation does not seriously undermine the defendant’s appearance as representing himself before the jury. Brown, supra.
A defendant performs the core functions of an attorney’s traditional role when he formulates his own trial strategy, determines his own theory of the defense, chooses the witnesses to subpoena and to call to the stand, formulates the questions to be asked of the witnesses, and performs the opening and closing statements. State v. Mathieu, 06-946 (La.App. 5th Cir.5/29/07), 960 So.2d 296, writ denied, 07-1424 (La.2/1/08), 976 So.2d 714. |15An attorney functions in an advisory capacity when he is not the controlling strategist, but rather helps the defendant with procedural matters and proper courtroom conduct. Id.
A defendant who waives the right to counsel is entitled to withdraw that waiver and reassert the right. United States v. Taylor, 933 F.2d 307 (5th Cir.1991). Of course, a defendant’s rights to waive counsel and to withdraw that waiver are not unqualified. A trial court need not countenance abuse of the right to counsel or the right to waive it. A defendant is not entitled to “choreograph special appearances by counsel,” McKaskle v. Wiggins, supra; cf. State v. Brown, supra. Nor is he allowed to alternate his position on counsel in order to delay his trial or otherwise obstruct the orderly administration of justice. E.g., McQueen v. Blackburn, 755 F.2d 1174, (5th Cir.1985), cert. denied 474 U.S. 852, 106 S.Ct. 152, 88 L.Ed.2d 125 (1985) (trial court must be wary of late request to change counsel which could impede the prompt and efficient administration of justice); United States v. Magee, 741 F.2d 93, (5th Cir.1984) (trial court has discretion whether to grant request to change counsel on the morning of trial).
Hill’s waiver of counsel was clear and unequivocal as well as knowing and intelligent. He stated time and again that he wanted to represent himself. The court gave Hill ample opportunities to consult with his standby attorney by providing numerous recesses in between the ques *811 tioning of witnesses. Hill never sought to withdraw his waiver of 11ficounsel, not even during the examination of the officer. This assignment lacks merit.
VI.
In a final matter, Hill has belatedly raised by motion to this court a request for appointment of appellate counsel. The motion was filed after Hill’s prior appellate brief and after the docketing and submission of his case on appeal.
The Constitution assures the right to counsel not only at the trial stage of a criminal proceeding, but also for initial appeal from the judgment of conviction. State v. Hampton, 595 So.2d 881 (La.App. 2d Cir.1992), writ denied, 598 So.2d 375 (La.1992), citing Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989).
At Hill’s sentencing hearing, the appeal of Hill’s case was discussed. Hill’s standby counsel reported that she had advised him of the procedural requirements. The trial court then told Hill that he should consider having the Louisiana Appellate Project appointed to represent him. The court also advised Hill that he would be allowed to file his own brief on appeal in addition to the brief filed by appointed counsel. Nevertheless, Hill maintained his waiver of the right to counsel. He now attempts to withdraw his waiver of appellate counsel claiming that the recently received transcript of the March 29, 2010 hearing, supplemented into the appellate record, has been “altered to show I asked that the victim be present at trial.”
Hill’s request for appellate counsel and his withdrawal of his prior waiver are untimely. The need for possible correction of the transcript, 117which rests upon Hill’s bare assertion, does not justify appellate counsel. Any issue with the accuracy of the transcript is a matter which is now better addressed through a post-conviction relief proceeding. Hill’s motion is denied.
VII.
An error patent review reveals a sentencing error. The defendant’s sentence for second degree battery was imposed without benefit of parole, probation, or suspension of sentence, contrary to the sentencing provision of the second degree battery statute. La. R.S. 14:34.1(C). According to La.C.Cr.P. art. 882(A), “[a]n illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.” Because the statute does not provide that the sentence is to be imposed without benefit of probation, parole or suspension of sentence, we amend Hill’s sentence to delete this prohibition.

Decree

For the foregoing reasons, the defendant’s conviction is affirmed. The defendant’s five-year sentence is amended to delete the prohibition against suspension of sentence, probation or parole eligibility and his sentence is affirmed as amended.
AFFIRMED AS AMENDED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, PEATROSS and LOLLEY, JJ.
Rehearing denied.

. Hill was originally charged with second degree battery, false imprisonment and flight from an officer.

. Apparently the state was unable to locate the victim because she was homeless.

. A protective order was otherwise in place preventing Hill from making such contact with the victim.

. On February 15, 2011, this court granted one of defendant's motions to supplement the appellate record with the transcript from the March 29, 2010 proceedings.

. We note that this issue has already been presented to this court by way of defendant’s prior writ application titled "Motion to Correct Record testimony Transcript on App. and minute of the Trial ct.” The trial court previously denied such motion and in doing so, stated "this court conducted an in camera review of the recorded testimony of the victim and found the transcription of the questionable portions of the victim’s testimony to be a verbatim dictation of what was said at trial." This court found that the trial court did not abuse its discretion in denying the motion because it was without jurisdiction or authority to amend the record because it did not find a clerical error requiring such amendment, citing State v. Rider, 201 La. 733, 10 So.2d 601 (1942); State v. Jones, 116 La. 51, 111 So. 492 (1926); State v. Camp, 326 So.2d 644 (La.App. 2d Cir.1975).